## City of Chicago v. John W. Smith.

1. ARREST OF JUDGMENT—*After Demurrer to Declaration is Overruled.*—After judgment overruling a demurrer to a declaration, there can be no motion in arrest of judgment for any defect in the declaration that could have been taken advantage of on the demurrer.

2. CITIES AND VILLAGES—*When Bound by Notice of Character of Work.*—When a city authorizes an arch to be constructed, requiring it to be done under supervision of the commissioner of public works, and such work is done in a careless and negligent manner, then the city is bound with notice of the character of the work and of the condition in which the arch was left.

3. ACT OF GOD—*What Is Not—High Winds.*—A high wind blowing at the velocity of fifty-seven miles an hour, causing an arch to fall, is not such an act of God as to release a city from liability, where they were negligent in the construction of the arch.

4. RELEASE—*When an Agreement Not to Sue Is Not.*—Where a cause of action exists against two joint tort feasors, a covenant or agreement not to sue one does not bar an action against the other in the absence of proof of release or accord and satisfaction.

Trespass on the Case. for personal injuries. Appeal from the Circuit Court of Cook County; the Hon. ABNER SMITH, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1900. Affirmed. Opinion filed June 4, 1901.

ANDREW J. RYAN, GEORGE E. GORMAN and JAMES J. KELLY, attorneys for appellant.

JOHN W. BYAM and JOEL M. LONGENECKER, attorneys for appellee.

MR. PRESIDING JUSTICE SHEPARD delivered the opinion of the court.

Appellee was seriously injured while walking rightfully upon the east sidewalk of State street near Adams street, in Chicago, about six o'clock on the evening of October 17, 1898, by the falling of a large arch upon him that had been constructed at that point a few days before. One of his legs was broken in two places and several of his ribs were broken, and he was otherwise severely injured. He recovered a judgment for $7,500 in the suit brought by him against the appellant for his damages. No question is made as to the amount of recovery, if he is entitled to recover anything.

The arch in question was twenty-six feet high and about six by seven feet wide at the bottom, and extended from sidewalk to sidewalk across State street. It had been constructed by the National Peace Jubilee Committee, under authority of the City of Chicago granted by the city council, by an ordinance which required the work to be done under the supervision of the commissioner of public works of the city. A strong wind was blowing at the time the arch fell. The suit was originally against the city and various members of the Jubilee Committee, but afterward these various persons paid the appellee $2,500 and he dismissed as to them, giving them an agreement or covenant not to sue them for any matters existing at the date thereof.

Appellant relies upon the following points for reversal of the judgment:

" 1.   The declaration was fatally defective in that it is not alleged that the arch was one which appellant had authority to build, and therefore the motion in arrest should have been sustained.

2.   The peremptory instruction requested by appellant at the conclusion of all the evidence offered in the case, should have been given by the trial court for the reasons :

(a)   The building of the arch and all things connected with it was *ultra vires* the corporation.

(b)   There is no evidence in the record which shows the arch in question was defectively constructed; there is no evidence in the record that appellant had notice of any

defects in the construction if the arch had existed for such a length of time that appellant ought to have known of such defects.

(c)   The evidence showed that the accident in question was occasioned solely by inevitable accident, or the act of God, that is, by the storm.

(d)   The evidence showed that appellee executed a release of the members of the Jubilee Committee and others jointly liable with appellant, releasing them from damages in the case.

3.   The evidence does not support the verdict.

4.   The court refused to give to the jury defendant's requested instruction telling the jury that if the arch was made of reasonably good material and was constructed in such a manner as to be reasonably safe for the purpose for which it was intended under ordinary circumstances and its fall was caused by an unusually or exceptionally strong wind, they should find the defendant not guilty.

5.   The court gave to the jury, at the request of the plaintiff below, an instruction telling the jury that it might find a verdict against the defendant, even though the evidence showed the appellee had been paid money by other persons than appellant, who were jointly liable with appellant, and had released such other persons so jointly liable with appellant.

6.   The instructions given by the court below in relation to the appellee's right of recovery, if the evidence showed appellee had released any one jointly liable with the appellant, were irreconcilable and conflicting."

We will take up and consider these points in the order stated.

The declaration does not allege that the arch in question was erected by the city, nor does the evidence tend to show that it was erected by the city.   The cause of action stated in the declaration and which the evidence sustained, was that the city permitted and suffered its streets and street crossings to become dangerous to the public by the negligent and careless erection therein of the arch, by persons licensed by the city to erect it.   It can not be disputed, and is not, that the city had control of its streets, and that the public, in the exercise of due caution, had the right of safe passage along and upon them, reasonably free from danger-

ous obstructions or erections. But if the declaration were subject to the charge of being defective, its sufficiency was not subject to being questioned by a motion in arrest of judgment after demurrer thereto was overruled and the city had pleaded over.

"It is a settled principle that, after a judgment on demurrer, there can be no motion in arrest of judgment for any exception that might have been taken on arguing the demurrer. 2 Tidd's Practice, 917. * * * If the defendant deemed his demurrer well taken he should have abided by it and not tendered an issue on the facts. By abandoning the demurrer, and pleading to the whole declaration, he admitted its sufficiency." American Express Company v. Pinckney, 29 Ill. 392; Quincy Coal Company v. Hood, 77 Ill. 68; Order of Mutual Aid v. Paine, 122 Ill. 625.

The second point may be considered in connection with its several subdivisions. As already said, it was not alleged and there was no evidence that the city built the arch. The city's act in the matter of constructing the arch was to authorize the Jubilee Committee, by an ordinance of the city council, to erect it, and presumably, for the purpose of securing the safety of the public, require that it should be done and maintained under the supervision of the commissioner of public works. And it was the careless and negligent erection and maintenance of the arch in pursuance of such authority, whereby the safety of persons lawfully upon the street was endangered, that was the gist of the declaration and the evidence in support thereof. The motion for a peremptory instruction at the close of all the evidence, to find the defendant not guilty, did not raise the question of the sufficiency of the declaration.

"As the only point in issue on demurrer to the evidence is whether the evidence is sufficient in law to maintain the issue in fact, no exception can, on such a demurrer, be taken to any defect in the pleadings, as the demurrer does not extend to them." Rothschild v. Bruscke, 131 Ill. 265.

We regard the evidence as abundantly sustaining appellee's claim that the arch was defectively constructed. It was plainly, if not palpably so, and the fact that it was built under the authorized supervision of the commissioner

of public works, bound the city with notice of the character of the work and of the condition in which it was left. Village of Jefferson v. Chapman, 127 Ill. 438.

The mere fact that a high wind was blowing at and before the arch fell did not make the falling of the arch an act of God, so as to exempt the appellant from liability.

"A loss or injury is due to the act of God when it is occasioned exclusively by natural causes such as could not be prevented by human care, skill and foresight." Wald v. P., C. C. & St. L. R. R. Co., 162 Ill. 545.

There was nothing unprecedented in the velocity or force of the wind at the time in question. The falling of the arch was palpably the result of the previous negligence in its construction, which permitted it to be overthrown by a wind that was not exceptionally strong. The officer in charge of the United States Weather Bureau in Chicago testified, and fixed the velocity of the wind, at the time, at fifty-seven miles an hour, and described it as a gale, but said that it is "quite usual" in Chicago, and occurs "several times a year."

The point concerning the so-called release given by the appellee to certain persons named in it seems to be based upon a misconception of its legal effect. The paper executed by appellee is as follows:

"STATE OF ILLINOIS, }
   County of Cook. }
It is hereby agreed that no action shall be begun against Charles Truax (and others named), by reason of any matters existing at this date by the undersigned.
   Given for a good consideration.
   Chicago, May 23, 1899.
                          (Signed)     JOHN W. SMITH.
   Witness:
      WILLIS SMITH."

This paper was simply an agreement or covenant not to sue, and did not bar the action against the other tort feasors. It is said of an almost identical paper, in City of Chicago v. Babcock, 143 Ill. 358, as follows:

"The legal effect of such a covenant is not the same as

that of a release. A covenant not to sue a sole tort feasor is to avoid circuity of action, considered in law a discharge and a bar to an action against such tort feasor. But the rule is otherwise where there are two or more tort feasors and the covenant is not to sue him. In such case the covenant does not operate as a release of either the covenantee or the other tort feasors, but the former must resort to his suit for breach of the covenant and the latter can not invoke the covenant as a bar to the action against them. * * * If, as claimed by appellee, the $150 was paid and received simply in consideration of the agreement not to sue LeCardi, and not in satisfaction of the damages, but only in part payment of the same, then the transactions between appellee and LeCardi did not amount to an accord and satisfaction, and were no bar to the suit against appellant. In fact it was for the interest of the latter that appellee should receive part payment of her claim from LeCardi, and thereby reduce the amount of damages recoverable from it. The views we have expressed are sustained by the following authorities: Snow v. Chandler, 10 N. H. 92; Knapp v. Roché, 94 N. Y. 329; Bloss v. Plymale, 3 W. Va. 393; Sloan v. Herrick, 49 Vt. 327; Brown v. Marsh, 7 Vt. 320; Chamberlain v. Murphy, 41 Vt. 110; Ellis v. Esson, 50 Wis. 138; Parmelee v. Lawrence, 44 Ill. 405."

The case has since been followed by the Supreme Court in West Chicago Street R. Co. v. Piper, 165 Ill. 325, and by this court in Chicago & E. I. R. Co. v. Hines, 82 Ill. App. 492.

We have examined the instructions commented upon by counsel for appellee in their fourth, fifth and sixth points, above quoted, but do not think we need to say more than we have already done, except as to the sixth. As to that, it is contended that appellee's first instruction and appellant's ninth instruction are diametrically contradictory, and that the giving of them was so erroneous as to demand a reversal of the judgment. We do not think so. Appellee's instruction correctly stated the law with reference to the agreement not to sue already commented upon, and appellant's instruction merely went further and told the jury that if they found the money paid under the agreement amounted in effect to an accord and satisfaction of all appellee's damages, they should find for the city. We see nothing contra-

dictory or inconsistent between the two. The jury properly found, under the evidence, that there was no accord and satisfaction of appellee's claim, and were correctly told to allow against appellee the sum that was paid him by the parties to whom the covenant not to sue ran, which, presumably, they did.

The verdict was abundantly supported by the evidence, and the judgment should be affirmed, which is accordingly done. Affirmed.